**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **SONNY KING, JR.,** | § | |
| | § | |
| **Petitioner,** | § | |
| **v.** | § | **CIVIL ACTION NO. V-07-55** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correction Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, Sonny King Jr., an inmate of the Texas Department of Criminal Justice -

Correctional Institutions Division (TDCJ-CID), has filed a petition for writ of habeas corpus

challenging his state court conviction under 28 U.S.C. § 2254.  The Respondent has filed a motion

for summary judgment asserting that Petitioner's claims are either procedurally barred or fail on

their merits.  After reviewing the pleadings, the records and the applicable law, the Court will grant

Respondent's motion and dismiss King's habeas petition.

**Factual and Procedural Background**

King was indicted for first-degree aggravated robbery in Victoria County, Texas. *The State

of Texas v. Sonny King*, No. 03-10-20,444-D (377th Dist. Crt.).  After pleading not guilty, he was

convicted by a jury on May 21, 2004 and sentenced to forty years imprisonment and a $10,000 fine.

King's conviction was affirmed by the Court of Appeals for the Thirteenth District of Texas on

October 6, 2005. *King v. State*, No. 13-04-446-CR (Tex. App.– Corpus Christi, Oct. 6, 2005, pet.

ref'd).  His petition for discretionary review was refused by the Texas Court of Criminal Appeals

on April 5, 2006. *Ex parte King*, No. 65,526-01, CR[1] at 64.  King filed a state application for writ

of habeas corpus on July 5, 2006 raising ineffective assistance of counsel and jury misconduct

claims; it was denied without written order on October 4, 2006.  *Id.* at cover.  He filed a second state

writ application claiming actual innocence based on newly discovered evidence, which was

dismissed as a subsequent application on March 14, 2007.  *Ex parte King,* No. 65,526-02 at cover.

King filed the instant federal petition for writ of habeas corpus around June 4, 2007.[2]

The following facts occurred leading to King's indictment:

On July 3, 2003, in Victoria, Texas, Juan Arrieta left his apartment to check on his truck.  As he approached the truck, he saw an unknown person in his vehicle.[3] He told the person to get out of his truck, at which time a man, later determined to be King, exited the truck and began threatening Mr. Arrieta.  King held a sharp object in his hand, which Mr. Arrieta described as a shank, knife or ice pick.[4]  He testified that he thought his life was in danger.[5]  King demanded money and took Mr. Arrieta back to his apartment.[6]  King struck him in his face with his fist.[7]  There, King took $15.00 and an X-Box video game system.[8]  As soon as King left the apartment, Mr. Arrieta went to a nearby pay phone and called the police.[9] The police responded and

---

[1]  "CR" refers to the state court records.

[2]  A prisoner's habeas petition is deemed filed at the time it is delivered to the prison authorities for mailing.  *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998).  King did not certify the date upon which he placed his petition in the prison mailing system. However, the date of King's filing is irrelevant because there are no timeliness issues involved in the Court's analysis.

[3] III RR 13.  "RR" refers to the court reporter's record of the trial proceedings.

[4]  *Id.* at 13–14.

[5]  *Id.* at 17.

[6]  *Id.* at 14.

[7]  *Id.* at 15.

[8]  *Id.* at 17.

[9]  *Id.* at 17–18.

fingerprinted Mr. Arrieta's truck. It was later determined that two sets of King's fingerprints were found in the truck.[10]

Senior Patrol Officer Chris Canales testified that he investigated the scene on July 3, 2003 and he identified damage to the steering column of Mr. Arrieta's truck, which indicated to him that theft of the truck was attempted.[11]  He testified that Mr. Arrieta told him King was not known to him at the time of the robbery.[12]  However, on July 25, 2003, at 3:42 a.m. Mr. Arrieta heard a knock on his door.[13]  He saw a woman standing outside and inquired what she wanted.  She stated that she had a friend of his who wanted to see him.  When he opened the door, King struck him in the head with his hands and tried to enter the apartment.[14]  Mr. Arrieta fought him off, and the police were called.  King fled the scene, but Mr. Arrieta identified him as the same man who robbed him on July 3.  Around September 4, 2003, the fingerprint analysis was completed and reported a match to King's fingerprints. Mr. Arrieta was shown a photo line-up and immediately identified King as his assailant.[15]

The jury convicted King, and pursuant to his previous election to have the court determine punishment, the court sentenced him to forty years imprisonment.  The foreperson of the jury later made a sworn statement indicating that in the course of deliberations some jurors stated that they did not want to find King guilty if it would result in a stiff sentence.  He went on to suggest that had the jurors known that King would be sentenced to forty years, they would not have found him guilty.  He stated he was happy to hear, after he and some of the jurors spoke to the prosecutor after trial, that King was a bad guy and that their verdict was the correct one.  Finally, he stated that this statement was his personal opinion, and he did not intend to speak for the other jurors.  King moved

---

[10] *Id.* at 99.

[11] *Id.* at 62–63.

[12] *Id.* at 42.

[13] *Id.* at 40–41.

[14] *Id.* at 41.

[15] *Id.* at 22.

for a new trial based on the statement of the foreperson, which was denied by the trial court.

In his habeas petition, King alleges:

1.     Actual Innocence.

2.     Legally and factually insufficient evidence to support his conviction because:

    a.     The State did not prove serious bodily injury or a deadly weapon;

    b.     The State did not prove that the fingerprints matched to King were placed on the truck at the time of the crime; and

    c.     Analysis of the Sprite bottle was not presented at trial.

3.     The State's motion in limine prevented him from fully exercising his right to confrontation.

4.     Juror misconduct.

5.     Ineffective assistance of counsel because his counsel:

    a.     Failed to thoroughly investigate facts;

    b.     Failed to interview witnesses;

    c.     Failed to properly review the prosecutor's file, including the DNA and fingerprint testing of a Sprite bottle found in the victim's apartment and the victim's history of filing false police reports;

    d.     Failed to present witnesses for the defense;

    e.     Failed to sufficiently impeach the victim's credibility;

    f.     Failed to object to error in indictment, which waived the error on appeal; and

    g.     Misled him into believing the judge would be more lenient at sentencing.

6.     The Texas Court of Criminal Appeals erred for not considering his second habeas petition on grounds of actual innocence.

**Legal Standard**

This petition is governed by applicable provisions of the Antiterrorism and Effective Death

4

Penalty Act of 1996 ("AEDPA").  The intent of the AEDPA is to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under the law, *Bell v. Cone*, 535 U.S. 685, 693 (2002), by limiting the scope of collateral review and raising the standard for federal habeas relief.  *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).  Federal habeas proceedings honor the "presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) ("[Section] 2254(d)'s highly deferential standard for evaluating state-court rulings . . . demands that state court decisions be given the benefit of the doubt."); *Evans v. Cockrell*, 285 F.3d 370, 374 (5th Cir. 2002).

Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state adjudication was (1) contrary to clearly established federal law as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000) (citing 28 U.S.C. §§ 2254(d)(1) and (2)).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *Williams,* 529 U.S. at 404.  In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable.  *Id.* at 408.

5

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330.

These standards will be applied to the pending summary judgment motion.

## Analysis

### 1.    Exhaustion

Under 28 U.S.C. § 2254, a habeas petitioner must exhaust available state remedies before seeking relief in the federal courts. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997). Exhaustion requires that the federal claims have been fairly presented to the highest court of the state. *Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990). In Texas, a petitioner satisfies this requirement by presenting his claims to the Texas Court of Criminal Appeals by filing a petition for discretionary review or, in post-conviction matters, by filing a state application for a writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07; *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). A claim is not exhausted unless the habeas petitioner provides the highest state court with a "fair opportunity to pass upon the claim." *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988) (alteration and internal question marks omitted).

A review of King's claims in his petition for discretionary review and initial state habeas corpus application reveal that he did not present several of his claims to the Texas Court of Criminal

Appeals.  Specifically, allegations 1, 2(b)–(c), 3, and 5(a)–(f) were not properly presented to the state's highest court.  Because King did not give the Court of Criminal Appeals a fair opportunity to review the substance of these claims, the allegations presented 1, 2(b)–(c), 3, and 5(a)–(f) *supra* were not exhausted.  King did present additional claims, including some of the referenced unexhausted claims, to the Court of Criminal Appeals in his second state habeas petition.  However, the Court of Criminal Appeals dismissed the application as a subsequent application pursuant to the Texas Code of Criminal Procedure, article 11.07, § 4(a)-(c).[16]  Based on King's procedural errors, he failed to exhaust state court remedies concerning these claims.

Moreover, because the Court concludes that proper presentation of his unexhausted claims in a subsequent application for state writ of habeas corpus would now be barred under the "abuse of the writ doctrine," these claims are barred from federal review. *See* TEX. CODE. CRIM. PROC., art. 11.07 § 4; *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999) (holding that a federal habeas claim was precluded because (1) petitioner failed to properly exhaust his state court remedies, and (2) the state court to which he would be required to present his unexhausted claims would find those claims to be procedurally barred under Texas' successive application provisions).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).  To establish cause, King must show that some objective external factor impeded his ability to present his claim

---

[16] *See Ex parte King*, No. 65,526-02 at cover.

in his first state habeas application. *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000).

While King claims actual innocence, characterizing the fingerprint and Sprite bottle evidence as newly discovered evidence, a review of the transcript demonstrates that this is clearly not new evidence.  Defense counsel repeatedly made reference to the lack of analysis on the Sprite bottle[17] and challenged the implications of the location and timing of the fingerprints found on Mr. Arrieta's truck.[18]  King offers no further explanation as to why his other claims were not raised in his petition for discretionary review or his initial application for a state writ of habeas corpus. King also fails to demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice because he has not presented any new and reliable proof that he is actually innocent of the charges.[19] *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Therefore, King's claims 1, 2(b)–(c), 3, and 5(a)–(f) will be denied as unexhausted and procedurally barred.

## II.     Factual and Legal Sufficiency

King's first exhausted allegation reiterates the same claims he presented before the Texas Court of Appeals and the Texas Court of Criminal Appeals regarding the factual and legal insufficiency of the evidence presented at trial.  To the extent King challenges the factual sufficiency

---

[17] III RR 24, 33, 80, 150, 158 (testimony from King).

[18] *Id.* at 64–65, 81, 83, 99, 125.

[19] To the extent that King's pleadings may be read as asserting a claim of actual innocence standing apart and alone from any procedural default, his claim fails as a matter of law. The Supreme Court has held that stand-alone claims of actual innocence are not cognizable on federal habeas corpus review. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998) (finding claims of actual innocence are not cognizable in habeas proceedings "absent an independent constitutional violation occurring in the underlying state criminal proceeding") (citations omitted).

of the evidence against him, this challenge is not reviewable in a federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Factual sufficiency claims are based on Texas state law rather than federal law, and therefore, do not qualify for relief under federal habeas review because they do not assert a violation of a federal constitutional right. *Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). Accordingly, the Court finds that King's claim of factual insufficiency of the evidence does not raise a constitutional claim and, therefore, does not warrant habeas relief.

The sole constitutionally cognizable claim regarding the sufficiency of the evidence of a state court conviction is that contained in *Jackson v. Virginia*, 443 U.S. 307 (1979). The standard announced in *Jackson* is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (quoting *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999)). The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). A federal habeas court is required to give great deference to a state court's determination of the sufficiency of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

On direct appeal, King argued there was no evidence or insufficient evidence to prove he

used or exhibited a deadly weapon or that he caused serious bodily injury.  Because the Thirteenth

Court of Appeals issued the "last reasoned opinion" of King's claims, the  state court opinion must

be reviewed to determine whether the denial of the claim was an unreasonable application of federal

law or based on an unreasonable determination of facts in light of the evidence.  *Ylst v. Nunnemaker*,

501 U.S. 797, 801 (1991); *Johnson v. Scott*, 47 F.3d 427 (5th Cir. 1995) (per curiam).  In affirming

King's conviction, the Court of Appeals applied the following analysis:

> By his third issue, appellant contends there is no evidence or insufficient evidence to establish that he used or exhibited a deadly weapon. *See* TEX. PEN. CODE ANN. § 29.03(a)(2) (Vernon 2003). Appellant claims that the State did not meet its burden of proving that the sharp object was, in the manner of use or intended use, capable of causing death or serious bodily injury.
>
> Section 29.03 of the Texas Penal Code provides in pertinent part as follows: (a) A person commits [aggravated robbery] if he commits robbery as defined in Section 29.02, and he:
>
> > (1) causes serious bodily injury to another; [or]
>
> > (2) uses or exhibits a deadly weapon . . ..
>
> (b) An offense under this section is a felony of the first degree.
>
> *Id.* § 29.03(a), (b). Section 29.02 defines robbery as intentionally, knowingly, or recklessly causing bodily injury to another in the course of committing theft and with intent to obtain or maintain control of the property. *Id.* § 29.02(a)(1). The penal code defines a deadly weapon as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury," or as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(A), (B) (Vernon Supp.2004-05). Where the victim suffers no wounds, the State is required to prove (1) that the thing used as a weapon was capable of causing death or serious bodily injury, and (2) the weapon was displayed or used in a manner indicating an intent to cause death or serious bodily injury. *Johnson v. State*, 919 S.W.2d 473, 477 (Tex. App.– Fort Worth 1996, pet. ref'd).
>
> Because criminal intent is an intangible, it can be proved only by circumstantial evidence. Although a knife may not be a deadly weapon per se, a jury may consider all of the facts of the case, and the State can prove, even without expert testimony,

that a particular knife is a deadly weapon by showing its size, shape, sharpness, the manner of its use, and its capacity to produce death or serious bodily injury. An intent to inflict serious bodily injury or death may be shown by evidence of assertive conduct by an attacker. *Id.*; *see Rogers v. State*, 877 S.W.2d 498, 500 (Tex. App.–Fort Worth 1994, pet. ref'd) (setting out that proof that a knife was used in manner intended to cause serious bodily injury can be established by its size and shape, manner of use, and verbal statements accompanying its use); *see also McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App.2000) (explaining utility knives do not qualify as deadly weapons because they are manifestly designed for other purposes).

Here, there is evidence that Juan Arrieta, the victim, was approaching his truck when he saw somebody inside the truck on the driver's side. Arrieta yelled, "[G]et out, get out of my car." The person in the truck, later identified as appellant, got out of the truck and came at Arrieta while displaying a sharp object. He threatened Arrieta and demanded money. Arrieta described the sharp object as having a wooden handle with a metal shank four to five inches long. He was not sure if it was a knife. Arrieta testified that he was scared. He "felt ... threatened and [that his] life was in danger." When Arrieta told appellant he did not have any money, appellant took him to Arrieta's apartment. While they were in the apartment, appellant had the sharp object in his pants. Appellant took $15.00 and a video game system from the apartment. Arrieta testified that appellant struck him on the left side of his face with his fist.

Christopher Canales, a senior patrol officer with the Victoria Police Department, investigated the incident. He talked to Arrieta, took pictures and fingerprints, and observed the damage to the vehicle. Officer Canales testified that Arrieta told him that he confronted the person who was inside his vehicle and when the person exited the vehicle, he came around and displayed a weapon that Arrieta described as "a sharp, pointed object ... possibly an ice pick." Arrieta told Officer Canales that appellant used the weapon in a threatening manner and told Arrieta to give him his money.

Appellant denied burglarizing Arrieta's vehicle and testified that Arrieta had loaned him the vehicle on previous occasions. He claimed Arrieta was lying when he picked him out of the lineup and that he was being framed. Appellant denied being at the apartments on the day of the incident or causing any damage to the vehicle.

Considering all of the evidence in the record in the light most favorable to the verdict, we conclude a rational jury could have found the accused guilty of the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Swearingen*, 101 S.W.3d at 97. Based on the evidence, a rational jury could have found that the testimony of appellant's assertive conduct with the sharp object, i.e., coming at Arrieta with the sharp object and threatening him with the object and demanding money, proved beyond a reasonable doubt the appellant used a sharp object against Arrieta in a manner indicating he intended to cause serious bodily

injury to Arrieta. *See Johnson*, 919 S.W.2d at 477; *see also* TEX. PEN. CODE ANN. § 29.03(a)(2) (Vernon 2003). Thus, we conclude the evidence is legally sufficient to establish that the pointed object was a deadly weapon under the circumstances. *See McCain*, 22 S.W.3d at 503.

***

By his first issue, appellant also contends the evidence is insufficient to support a finding that appellant caused serious bodily injury. *See* TEX. PEN. CODE ANN. § 29.03(a)(1) (Vernon 2003). However, we have concluded the evidence is sufficient to support appellant's conviction under section 29.03(2) of the penal code. *See id.* § 29.03(a)(2). Because this is dispositive of appellant's evidentiary contentions regarding his conviction, we need not address appellant's first issue. *See* TEX. R. APP. P. 47.1.[20]

*King v. State*, 2005 WL 2470525 at *2–3 (Tex. App.– Corpus Christi 2005, pet ref'd). Because the

Court of Appeals applied the *Jackson* standard, King has not shown that the state court unreasonably

applied federal law. Further, a review of the transcripts and the testimony relied upon by the Court

of Appeals, demonstrate that the verdict was supported by evidence, when viewed in a light most

favorable to the prosecution. King has not provided clear and convincing evidence that would

overcome the determination of the state court. *See* 28 U.S.C. § 2254(e)(1).

## III.    Jury Misconduct

King argues that jury misconduct led to the rendition of an improper verdict because the

jurors only found him guilty because they believed he would receive a light sentence. King relies

---

[20] To the extent King challenges the "bodily injury" provision of Section 29.02, as included in Section 29.03, this argument also fails.  Section 29.02 of the Texas Penal Code provides: "[a] person commits [robbery] if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ." TEX. PEN. CODE § 29.02(a)(1)–(2) (Vernon 2003).  "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8).  Mr. Arrieta testified that King hit him with his fist, which caused physical pain. III RR 15.  The bodily injury element does not require a visible injury, as King seems to argue.  *See Lewis v. State*, 530 S.W.2d 117, 118 (Tex. Crim. App. 1975) (twisted arm).  Thus, it was reasonable for the jury to determine that this element of the crime was satisfied beyond a reasonable doubt.

12

on an affidavit by the jury foreperson filed in support of King's motion for new trial. When a jury deliberation is tainted by outside influence, a presumption of prejudice arises. *United States v. O'Keefe*, 722 F.2d 1175, 1179 (5th Cir. 1983).  However, when no outside influences are present, no presumption arises, and the defendant must demonstrate that jury misconduct prejudiced his constitutional right to a fair trial.   *Drew v. Collins*, 964 F.2d 411, 415–16 (5th Cir. 1992). Additionally, the state court's adjudication on the merits requires federal deference under 28 U.S.C. § 2254(d)(1). *Salazar v. Dretke*, 419 F.3d 384, 398 (5th Cir. 2005).

The Thirteenth Court of Appeals determined:

The jury foreman's affidavit, filed in support of appellant's motion for new trial, set out that the jurors only found appellant guilty based on their belief that he would get a light sentence. It provided that the jurors would have found appellant not guilty had they known he would receive a forty year sentence. The supporting affidavit further explained that during the guilt phase of the trial the jurors expressed a concern about appellant's punishment. However, the trial court properly informed them that this was not an issue for their consideration. The jurors resolved their differences and found appellant guilty beyond a reasonable doubt. According to the affidavit, after determining appellant was guilty, "some of the jurors ... spoke to the prosecutors and were relieved to find out [appellant] had other criminal charges pending against him . . . and [their] guilty verdict was the correct decision."

Based on our review of the affidavit, we cannot find any reason for granting a new trial. The trial court's decision was not arbitrary or unreasonable because the jury foreman's affidavit did not set forth a ground that establishes the jury engaged in misconduct that resulted in appellant not receiving a fair and impartial trial. *See* TEX. R. APP. P. 21.3(g); *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

King has only reiterated the same argument presented in his direct appeal and state habeas petition, relying on the same affidavit, and has not shown that the Court of Appeal's determination was an unreasonable application of federal law.  Since King has not shown that the jurors had any contact with an outside influence, he cannot avail himself of the presumption of prejudice. Therefore, King must demonstrate that any jury misconduct that took place deprived him of fair and

impartial trial.  He has failed to do so.[21]  When the jury sent out a note during the deliberations inquiring "If found guilty, who is responsible for sentencing? Does the jury have any input?," the trial court admonished the jury that this was not an issue for their consideration.[22]  Armed with this knowledge, the jury was still able to come to a unanimous verdict, finding King guilty.  The jury also was polled after the verdict confirming their unanimous decision.[23]  King does not present evidence to support his allegation of prejudice. As such, he fails to show a constitutional violation on this ground.

## IV.     Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.  *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.

---

[21]  King also heavily relies on an inadmissible affidavit by the jury foreperson discussing the private, internal deliberations of the jury. *See* FED. R. EVID. 606(b) ("A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying," namely "any matter or statement occurring during the course of the jury's deliberations."); *see also Tanner v. United States*, 483 U.S. 107, 120-21 (1987).  The exceptions FRE 606(b) do not apply to this case.

[22]  CR 66.

[23]  III RR 192.

*Strickland*, 466 U.S. at 687.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  *Strickland,* 466 U.S. at 690.  Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled.  *Id.*

King's single exhausted claim for ineffective assistance of counsel challenges his counsel's advice that King should be sentenced by the court, instead of the jury.  King cites a letter written to him by his counsel stating that probation is possible, but probably unlikely.  King claims this misstatement of the law caused him to choose court sentencing. In the non-capital sentencing context, when addressing an ineffectiveness claim, the court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh. *United States v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2004)

(upholding "significantly less harsh" standard involving state sentences); *Spriggs v. Collins*, 993 F.2d 85, 88–89 (5th Cir. 1993). In deciding whether such prejudice occurred, a court should consider a number of factors: (1) the actual amount of the sentence imposed on the defendant by the sentencing judge or jury; (2) the minimum and maximum sentences possible under the relevant statute or sentencing guidelines; (3) the relative placement of the sentence actually imposed within that range; and (4) the various relevant mitigating and aggravating factors that were properly considered by the sentencer. *Id.*

King posited the same argument in his state habeas petition to the Court of Criminal Appeals. The Court of Criminal Appeals denied his petition without written order, indicating that it adjudicated his claims on the merits. *See Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits."); *Barrientes v. Johnson*, 221 F.3d 741, 778-80 (5th Cir. 2000). Giving due deference to the state court opinion, this Court cannot grant habeas relief unless King shows that the state court decision was an unreasonable application of federal law or based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

King has failed to show that he was prejudiced by his counsel's erroneous statement of the law. In counsel's letter, dated June 14, 2004, he stated: "Although you are eligible for probation from the judge, with your criminal history, coupled with evidence of involvement in one or more of the pending indictments, probation, though not impossible, is unlikely . . .."[24] King cannot claim

---

[24] CR 26. King actually was ineligible for probation because a judge cannot suspend a sentence and place a defendant on community supervision for the offense of aggravated robbery. Tex. Code Crim. Proc. art 42.12 § 3g(a)(1)(F), (2).

he relied on this information in making his determination whether or not to have the court sentence him. At the time he received the erroneous advice, the jury, after finding him guilty, had already been dismissed, he had already elected to be sentenced by the court and he was no longer able to change his election for sentencing. King was also made aware that the District Attorney would use ten other felonies pending against him and that probation was unlikely. Further, there is no evidence that King was told at any time prior to trial that he was eligible for probation.

While he relies on the affidavit from the jury foreperson indicating their reluctance to sentence him harshly, King ignores the evidence that was brought out at sentencing regarding his extensive previous criminal history. King is only able to speculate about the hypothetical jury's sentence, and there is no way to identify the effect the evidence of his other criminal acts would have had on the jury's view of his sentence. Given his criminal history[25] and the judge's imposition of a sentence within the middle of the sentencing range,[26] King presents no compelling argument to rebut the state court's determination, and there is nothing in the record to suggest that counsel's misstatement led to a sentence that was significantly more harsh. *See Spriggs*, 993 F.2d at 88.

### V.     Second State Habeas Petition

Lastly, King argues the Court of Criminal Appeals erred when it dismissed his second state habeas petition as a successive petition. It is well established that "infirmities in state habeas proceedings do not constitute grounds for relief in federal court." *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (quoting *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997)). Federal

---

[25] IV RR 125.

[26]   Being adjudged guilty of a first degree felony, King was eligible to be punished by imprisonment for life or for any term of imprisonment from 5–99 years and a fine not to exceed $10,000. TEX. PEN. CODE § 12.32.

habeas relief cannot be had "absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). The state ruling denying King the opportunity to file further writs of habeas corpus was not a denial of his constitutional rights because the state is under no constitutional obligation to provide post-conviction remedies. *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987). Accordingly, King is not entitled to habeas relief on this ground.

Therefore, this action should be dismissed because King has failed to demonstrate that he is entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253, Petitioner needs to obtain a certificate of appealability ("COA") before he can appeal this Memorandum Opinion and Order dismissing his petition. A COA will not be issued unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 263 (quoting *Slack*, 529 U.S. at 483); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court

18

may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  Based on the foregoing analysis, the Court concludes that Petitioner is not entitled to a COA under the applicable standards.  *See* 28 U.S.C. § 2253(c).

## Conclusion

The Court **ORDERS** the following:

1.    Respondent's Motion for Summary Judgment (Dkt. # 21) is **GRANTED**.

2.    Petitioner's Motion for Judgment (Dkt. # 17) is **DENIED** as moot.

3.    Petitioner's Motion Opposing Any Further Extensions from Respondent (Dkt. # 22) is **DENIED** as moot.

4.    This action is **DISMISSED** with prejudice.

5.    A Certificate of Appealability is **DENIED**.

**SIGNED** on this 6th day of August, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE